# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 1:20-CR-00441 |
| Plaintiff, | |
| ~ vs ~ | JUDGE JAMES S. GWIN |
| BLESSING ADELEKE, | **DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** |
| Defendant. | |

Now comes the Defendant, Blessing Adeleke, by and through the undersigned counsel, and hereby submits the attached Sentencing Memorandum, incorporated by reference herein. Defendant requests a downward variance from the sentencing range set forth in the final Pre-Sentence Investigation Report (PSIR). The reasons and legal support are set forth in the attached memorandum.

Respectfully submitted,

/s/ *Michael J. Goldberg*
Michael J. Goldberg (0040839)
The Goldberg Law Firm, LLC
323 Lakeside Avenue, Suite 450
Cleveland, OH 44113
Tel: 216-696-4514
Fax: 216-781-6242
goldberg@goldberg-lawfirm.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2023, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Michael J. Goldberg*
Michael J. Goldberg (0040839)

# MEMORANDUM

## I. Statement of the Case

On August 13, 2020, Defendant, Blessing Adeleke, was named in a 17-count indictment charging him with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 & 1344, and 16 counts of bank fraud in violation of 18 U.S.C. § 1344. On March 12, 2022, Mr. Adeleke was arrested in the West-African nation of Ghana. Mr. Adeleke was arraigned in the Northern District of Ohio on July 1, 2022, and waived his right to a detention hearing. On October 12, 2022, a jury trial was held in this case. The jury found Mr. Adeleke guilty on all counts. The Court ordered the preparation of a Pre-Sentence Investigation Report (PSIR). The matter is currently set for sentencing on January 18, 2023.

## II. Law and Argument

### a. PSIR Guideline Calculations

**Base Offense Level: 7**
U.S.S.G. §§ 2X1.1(a) & 2B1.1(a)(1)

**Specific Offense Characteristics:**

    **Loss More than $ 40,000 but less than $95,000 +6**
    U.S.S.G. § 2B1.1(b)(1)(D)

    **10+ Victims/ Mass Marketing + 2**
    U.S.S.G. § 2B1.1(b)(1)(D)

    **Sophisticated Means + 2**
    U.S.S.G. § 2B1.1(b)(10)(B)

    **Production/Trafficking Unauthorized Access Device + 2**
    U.S.S.G. § 2B1.1(b)(11)(B)(i)

**Adjustment for Role in the Offense + 2**
U.S.S.G. § 3B1.1(c)

**Total Offense Level: 21**

**Criminal History Category: I**

**Guideline Range: 37-46 Months**
U.S.S.G. § 5A

While the Defendant initially asserted objections to some offense characteristics, these objections have been withdrawn.

    b. **This Court Should Apply a Downward Variance Below Mr. Adeleke's Guideline Range**

18 U.S.C. § 3553(a) sets forth factors that district courts must consider at sentencing:

1. The nature and circumstances of the offense and the history and characteristics of the Defendant;

2. The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law; and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from future crimes of the Defendant; and (D) to provide the Defendant with needed education or vocational training; medical care or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The advisory guideline range;

5. Any pertinent policy statements issued by the Sentencing Commission;

6. The need to avoid unwarranted sentence disparities;

7. The need to provide restitution to any victims of the offense.

In this case, there are several factors that support a downward variance, including the effects Mr. Adeleke's non-citizenship have on creating unwarranted sentencing disparity in this case and his personal background and characteristics.

### i. Mr. Adeleke's Status as a Non-Citizen Subjects Him to Harsher Consequences, and Therefore an Unwarranted Disparity with Sentences For the Typical Offender

Mr. Adeleke is specifically ineligible for the First Step Act's provisions for additional earned days of good time credit and the expanded eligibility for offenders to serve up to one year in a halfway house or on electronic home monitoring at the end of their sentence. See 18 U.S.C. § 3632(d)(4)(E). Accordingly, unlike U.S. citizens or legal immigrants, Mr. Adeleke will serve 100% of his sentence behind BOP walls. When his sentence is completed, he will be released into the custody of the US Immigration Service for further detention and removal. This process can take months, thus extending Mr. Adeleke's sentence without any credit towards the sentence imposed by this Court. While most persons charged with economic crimes or theft offenses having an alleged amount of loss under $95,000 are not denied bail or the benefit of self-surrender, Mr. Adeleke has or will be denied both. Paragraph 88 of the PSIR notes that the average sentence for an offender with this guideline offense level and no criminal history is 28 months. Mr. Adeleke has been detained on these charges since his arrest on March 12, 2022. The increased prison exposure cannot be rationalized just by his foreign nationality and residence. That factor is taken into account by the application of the sophisticated means enhancement at Paragraph 24 of the PSIR. This is an additional two points, which are applied in this case because Mr. Adeleke originated this scheme in a foreign country. A downward variance is appropriate to account for the unwarranted disparity Mr. Adeleke faces in this case only because of his status as a foreign national. For instance, even if the top end of the sentencing range is applied (46 months), a non-foreign national could expect release after about 18 more months of incarceration. This takes into account full credit for

time served for days since arrest and application of the 54 days per year standard good time credit (not any additional good time credit under the First Step Act.) It also takes into consideration release to a halfway house at the 12-month remaining mark, something it would be reasonable to assume given the Defendant's lack of any previous criminal record and the non-violent nature of this conviction. This does not account for the average sentence of 28 months. The BOP will likely not apply credit for time served on foreign soil. In this case, this would be the days between his arrest in Ghana on March 12, 2022 and his delivery to the U.S. Marshal for the Northern District of Ohio on June 29, 2022, a total of 110 days. Nor would it consider post-release ICE detention. If foreign detention and post-release detention are not counted toward his sentence, Mr. Adeleke stands to serve at least 12-17 months longer in prison than a similarly situated U.S. citizen. For this reason alone, the Court should consider a downward variance to account for the disparity.

    ii.    **Mr. Adeleke's Personal Characteristics**

Mr. Adeleke was born in Lagos, Nigeria in 1990. His father left the family when he was 15 years old. As a result, his family was very poor for the rest of his childhood. He often slept in churches and went hungry. Because of their poverty, his mother sent Mr. Adeleke to live with another family so he could finish school. This family, however, treated him like "a slave for their own children," according to Mr. Adeleke. Because of the remoteness of the area where this family lived, he was unable to leave. Despite these difficulties, Mr. Adeleke completed high school, and later studied business administration at the University of Cyprus until his arrest in this matter. Mr. Adeleke is obviously intelligent. He is devoted to his child who resides in Africa and his fiancé who resides in the United States. The marriage plans, of course, will have to wait.

However, the stability afforded to Mr. Adeleke by these relationships will help him reintegrate into his community upon release.

### iii. The Nature and Circumstances of the Offense Support a Downward Variance

The PSIR assesses a 6-point offense level enhancement under U.S.S.G. § 2B1.1(b)(1)(D) based on the amount of loss, and a 2-point enhancement under U.S.S.G. § 2B.1(b)(2)(A), because the offense affected more than ten victims, or was committed through mass marketing. Defendant has retracted his previous objections to these specific offense characteristics. However, a downward variance is appropriate to account for the issues with these offense characteristics set forth below.

**Amount of Loss**

The PSIR states at paragraph 22 that this offense characteristic applies to Mr. Adeleke, because the amount of loss in this case is $44,281. This amount possibly overstates the actual loss caused by the scheme and that can be proven by the Government.

First, the $10,000 sent to Co-Defendant Kylie Harlow, as set forth in paragraph 15 of the PSIR, accounts for most if not all, of the money sent by Harlow back to Adeleke by Moneygram and Western Union. These amounts are therefore counted twice to the extent that the funds sent back to Mr. Adeleke are counted in reaching the amount of loss calculated in the PSIR.

The Government will probably reference intended loss at sentencing and argue for all possible losses to be considered. The concept of "intended loss" only exists in the application notes found in the U.S. Sentencing Guidelines Manual. See commentary note 3(A)(ii) to U.S.S.G. § 2B1.1. The commentary note is an interpretive rule by the United States Sentencing Commission. *Stinson v. United States*, 508 U.S. 36, 44-45 (1993). Since the United States Supreme Court's decision in *Auer v. Robbins*, 519 U.S. 452 (1997), courts have deferred to an

7

agency's interpretation of a regulation, unless that interpretation is plainly erroneous or inconsistent with the regulation. *Stinson* at 47. However, under the more recent Supreme Court decision in *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), before a court can apply *Auer* deference, it must first exhaust traditional tools of statutory interpretation and determine that the statute is "genuinely ambiguous." The court must also find that the commentary is a reasonable interpretation within the zone of ambiguity identified, and that the character and context of the interpretation entitles it to controlling weight. *Id*. at 2414.

In *United States v. Banks*, 2022 WL 17333797 (3d Cir. Nov. 30, 2022), the Third Circuit Court of Appeals applied *Kisor* to the guideline commentary for intended loss. The court held that as used in U.S.S.G. § 2B1.1, the term "loss" is not ambiguous. In reaching this holding, the court reviewed common dictionary definitions of "loss," and found that they all described actual, not intended loss. *Id*. at *19-20. The court therefore held that the commentary was not entitled to *Auer* deference, and it based its determination of the defendant's guideline sentence only on actual, rather than intended loss. *Id*.

While not addressing intended loss specifically, the 6th Circuit Court of Appeal has also found that the guideline commentary for loss does not deserve *Auer* deference. In *United States v. Ricciardi*, 989 F.3d 476 (6th Cir. 2021), the court examined the guideline commentary's special rule assessing a loss amount of $500 for every unauthorized or counterfeit access device. The court found that the word "loss" as used in 2B1.1 was not sufficiently ambiguous for *Auer* deference to apply. *Id*. at 476. The court therefore held that the district court erred by relying on the commentary and using the $500 per access device rule in calculating the amount of loss. *Id*. at 489.

Both the 6th and 3rd Circuits have held that the word "loss" in § 2B1.1 is not ambiguous, and the commentary to that guideline is therefore not entitled to deference. The 3rd Circuit has gone further and held that loss under § 2B1.1 does not include intended loss as suggested by the commentary. This Court should therefore calculate Mr. Adeleke's guideline sentence range based only on actual and proven loss, rather than intended loss, or the otherwise extensive loss anticipated to be suggested by the Government. Based on actual loss, and accounting for the fact that much of the funds transferred to Ms. Harlow were double-counted in the PSIR, the loss attributed to Defendant may be excessive, but certainly not more than $95,000.

### **10 or More Victims/Mass Marketing**

The PSIR applies a 2-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A). This adjustment applies where the offense involved ten or more victims, or where the defendant committed the offense through mass-marketing. Defendant does not object to the PSIR's finding that there were ten or more victims, however, this offense did not involve mass-marketing.

Both the 2nd and 8th Circuit Courts of Appeal have held that the enhancement applies for mass marketing only where the targets of the marketing were intended victims of the scheme. *United States v. Lacey*, 699 F.3d 710, 714 (2nd Cir. 2012); *United States v. Miller*, 588 F.3d 560, 568 (8th Cir. 2009). That is not the case here. The Facebook posts referenced at Paragraph 23 of the PSIR were used to sell stolen credit card information to other criminals. The posts were not directed at victims or intended victims of any part of the scheme. The § 2B1.1(b)(2)(A) enhancement, if based solely on mass-marketing, therefore would not apply to Mr. Adeleke.

**III.     Conclusion**

A sentence 6-12 months below the guideline range of 37-46 months would serve the principles set forth in 18 U.S.C. § 3553(a) and provide adequate deterrence to potential criminals in foreign jurisdictions. A sentence in this range will adequately punish Mr. Adeleke but will avoid an unwarranted disparity based on his foreign nationality. For the foregoing reason, Mr. Adeleke requests that the Court apply a downward variance and him sentence 6 to 12 months below the guideline range identified in the PSIR.

Respectfully submitted,

/s/ *Michael J. Goldberg*
Michael J. Goldberg (0040839)
*Attorney for Defendant*